Alan I. Schimmel, Esq., SBN 101328
aischimmel@spattorneys.com
Michael W. Parks, Esq. SBN 154531
mwparks@spattorneys.com
Brian A. Carness, Esq., SBN 235603
bacarness@spattorneys.com
Stacey C. Cutting, Esq. SBN 265993
srcutting@spattorneys.com
SCHIMMEL & PARKS
15303 Ventura Blvd., Ste. 650
Sherman Oaks, California 91403
Phone: (818) 464-5061/Fax: (818) 464-5091

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA
EX REL. SUSAN PAINTER,

                        Plaintiff,

vs.

PROSPECT MEDICAL HOLDINGS;
BROTMAN MEDICAL CENTER,

                        Defendants.

Case No. CV11-04260 JFW(PJWx)

**FALSE CLAIMS COMPLAINT FILED IN CAMERA PURSUANT TO 31 U.S.C. § 3730(b)(2)**

1. **VIOLATIONS OF THE FALSE CLAIMS ACT UNDER 31 U.S.C. §§ 3729(a)(1)(A) & (B))**

2. **FALSE CLAIMS ACT CONSPIRACY UNDER 31 U.S.C. § 3729(a)(1)(C)**

**DEMAND FOR JURY TRIAL**

    COMES NOW Plaintiff for causes of action against Defendants, and each of them, alleges and complains as follows:

## INTRODUCTION

    1.    This action seeks to recover damages and civil penalties on behalf of the United States of America (the "Government") arising from false statements

FALSE CLAIMS COMPLAINT FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

2011-1002
32349.wpd



PAID

MAY 18 2011

Clerk, US District Court
Central 4512

1  and claims made and presented by the named Defendants and/or their agents,

2  employees, affiliates, and co-conspirators  in violation of the Federal Civil False

3  Claims Act, 31 U.S.C. §§ 3729, *et seq*., as amended (the "Act").  Plaintiff alleges

4  that Defendants engaged in a scheme to bill Medicare and Medi-Cal for

5  unnecessary hospitalization and related care.

6          2.          Specifically, Plaintiff alleges herein that Defendants sought and

7  received reimbursement from Medicare and Medi-Cal for the unnecessary

8  hospitalization and other costs primarily related to the treatment of patients at a

9  chemical dependency unit of Brotman Medical Center.  The patients who received

10  the unnecessary hospitalization and related services were all  covered by both

11  Medicare and Medi-Cal ("Medi/Medi patients").  The Medi/Medi patients at issue

12  herein fall within two identifiable groups.  The first group had negative urine

13  screens upon admission or other plain indications that they had no medical reason

14  for being hospitalized for chemical dependency.  The second, referred to by

15  Brotman staff as "frequent fliers" or "census makers," had a marked, abusive

16  frequency of unnecessary or counterproductive admissions.  The commonality in

17  both groups is that the admissions to Brotman's chemical dependency unit were

18  determined by the patients' Medi/Medi level of coverage rather than by the

19  patient's need or suitability for a hospitalization level of care for acute withdrawal

20  from drugs or alcohol.

21          3.          The Act provides that any person who knowingly submits or causes

22  to be submitted a false or fraudulent claim to the Government for payment or

23  approval is liable for a civil penalty of up to $10,000 for each such claim

24  submitted or paid, plus three times the amount of the damages sustained by the

25  Government.

26          4.          The Act allows any person having information regarding a false or

27  fraudulent claim to bring an action on behalf of himself or herself (the "relator")

28  and the Government and to share in a percentage of the recovery.  The Act

1  requires that the complaint be filed, as it has been here, under seal for sixty days

2  (without service on the defendants during the period the complaint remains under

3  seal) to enable the Government to conduct its own investigation into the complaint

4  allegations and to determine whether to join the action.

5

6  **THE PARTIES**

7

8  5.    Susan Painter ("Relator") is a registered nurse employed by Brotman

9  Medical Center.  For the past eleven years, Relator has worked as a staff RN in an

10  18-bed chemical dependency unit of Brotman Medical Center.  Relator has the

11  highest seniority of any nurse currently working on the Detox Unit.  Because of

12  her seniority and experience, Relator often functions as the Charge Nurse for the

13  night shift, which starts at 7:00 pm and ends twelve-and-one-half hours later at

14  7:30 am.  (Relator recently has also worked the day shift.)  As the Charge Nurse,

15  Relator is responsible both for a full patient load and for providing supervision to

16  the other nursing staff working the night shift.  She has first-hand knowledge of

17  the false claims allegations set forth below, except where specifically indicated

18  otherwise.

19  6.    Defendant Brotman Medical Center ("Brotman") is an accredited, for-

20  profit hospital based in Culver City, California.  In addition to operating a

21  420-bed, acute care hospital with emergency room services, Brotman operates

22  specialty units, including the chemical-dependency unit and a psychiatric unit.

23  7.    Defendant Prospect Medical Holdings, Inc. ("Prospect") is a for-

24  profit, vertically integrated heath care corporation.  Prospect owns and operates

25  several independent physician associations and five community based hospitals in

26  the Los Angeles area, including Brotman.  Prospect owns the four non-Brotman

27  hospitals though its wholly-owned subsidiary Alta Hospitals System, LLC

28  (formerly Alta Healthcare System, Inc. and herein "Alta").  These Alta hospitals

2011-1002
32349.wpd

1  are Hollywood Community Hospital, Norwalk Community Hospital, Los Angeles
2  Community Hospital, and Van Nuys Community Hospital.  Prospect acquired Alta
3  and its hospital properties in August of 2007.  In September of 2005, a group of
4  investors led by Prospect acquired Brotman.   In April of 2009, Prospect, as a part
5  of Brotman's bankruptcy reorganization, increased its corporate ownership interest
6  in Brotman from thirty-three percent to seventy-two percent.

7

**JURISDICTION AND VENUE**

9

10      8.      This Court has jurisdiction over the subject matter of this action
11  pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, which specifically confers
12  jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and
13  3730.
14      9.      This Court has personal jurisdiction over Defendants pursuant to 31
15  U.S.C. § 3732(a), which provides that any "action under section 3730 may be
16  brought in any judicial district in which the defendant, or in the case of multiple
17  defendants, any one defendant can be found, resides, [or] transacts business, or in
18  which any act proscribed by section 3729 occurred ."  Defendants, each of them,
19  can be found, reside, and transact business in the Central District of California.
20      10.     Venue is proper in the Central District of California pursuant to 31
21  U.S.C. §3732(a).

22

**FACTUAL BACKGROUND**

24

25      11.     Brotman is the last remaining hospital in the Los Angeles area to
26  operate a unit dedicated solely to the treatment of patients for the acute withdrawal
27  from drugs or alcohol.  Brotman's chemical dependency unit was formed in 1999
28  when Brotman acquired Exodus Recovery Center, a well-known and highly-

2011-1002
32349.wpd

1   regarded detox facility in the Los Angeles area previously affiliated with other

2   institutions, including Daniel Freeman Memorial Hospital.   The majority of

3   Exodus Recovery Center's patients prior to its move to and absorption into

4   Brotman in 1999 were covered by private insurance.   In 2007, Brotman changed

5   the name of the chemical dependency unit from Exodus Recovery Center to

6   Miracles Acute Detox Center (collectively referred to hereafter as the "Detox

7   Unit").   With the change in name came a change in business strategy.   From

8   Prospect's-led acquisition of Brotman in 2005 through approximately 2007,  the

9   proportion of Detox Unit patients covered by private insurance had declined, if at

10  all, as a result of incremental economic and market trends.   But from at least 2007

11  to the present, the percentage of Medi/Medi patients admitted to the Detox Unit

12  has dramatically increased (and the percentage of patients with private insurance

13  has correspondingly decreased) as a direct result of Prospect's business strategy.

14          12.       To further its new model of maximizing the utilization of Medi/Medi

15  patients, Prospect relied and drew upon its Alta hospital resources.   For example,

16  in 2008 it transferred Dan Rowling from Hollywood Community Hospital

17  ("Hollywood Community"), an Alta hospital with a large psychiatric unit

18  populated predominantly with Medi/Medi patients, to Brotman and placed  him in

19  charge of admissions or "intake" at the Detox Unit.   As a result of his experience

20  at Hollywood Community, Mr. Rowling had developed extensive contacts both

21  with those in a position to refer Medi/Medi patients to the Detox Unit and with the

22  Medi/Medi patients themselves.   Mr. Rowling, under Defendant's knowledge and

23  control, was not circumspect about his methods for maximizing the number of

24  Medi/Medi patients admitted to the Detox Unit and the abuse of their Medi/Medi

25  insurance coverage.   The principal fraudulent ones, included:

26          (a)       Moving patients by ambulance from Hollywood Community or one of

27                    Prospect's other hospital properties to the Detox Unit even though

28                    these Medi/Medi patients had no medical need for chemical

2011-1002
32349.wpd

1    dependency hospitalization, much less for ambulance transport.

2    (b)    Moving patients by ambulance from other hospitals with whom Mr.

3           Rowling had a relationship to the Detox Unit even though these

4           Medi/Medi patients had no medical need for chemical dependency

5           hospitalization, much less for ambulance transport.

6    (c)    Contacting Medi/Medi patients directly to encourage them to return

7           to the Detox Unit for a "check up" even though these patients had no

8           medical need for chemical dependency hospitalization.

9    (d)    Allowing and encouraging Medi/Medi patients to cycle in and out of

10          the Detox Unit until they exhausted their Medi/Medi coverage even

11          though their need was for food and shelter rather than hospitalization.

12   (e)    Transferring Medi/Medi patients from the Detox Unit after the

13          expiration of their DRG seven-day coverage limit to Brotman's

14          psyche unit solely for the purpose of billing the Government for a

15          second admission.

16   These practices have continued and are being even more aggressively pursued by

17   Mr. Rowling's intake-coordinator successor.

18          13.    Relator, like the other nurses who worked on the Detox Unit,

19   witnessed the marked change in Brotman's attitude toward and the treatment of

20   Medi/Medi patients, which became noticeable after Prospect's 2007 acquisition of

21   Alta and open and notorious after Mr. Rowling arrived in 2008.  For example,

22   prior to 2007, the Detox Unit did not admit patients (including Medi/Medi

23   patients) without a urine screen indicating the medical necessity for detoxification

24   in a hospital setting.   Patients rarely arrived at the Detox Unit by ambulance and

25   only when medically necessary.   Medi/Medi patients were never contacted and

26   encouraged to admit themselves to the Detox Unit or told that they were entitled to

27   "check ups."  And, significantly, Medi/Medi patients admitted to the Detox Unit

28   could not be readmitted to the Detox Unit until at least 60 days had transpired

---

**FALSE CLAIMS COMPLAINT FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

2011-1002
32349.wpd

1   since the date of their last discharge – and even these patients were often required

2   to sign contracts with staff to ensure that they were committed to making a

3   genuine effort to doing everything required to achieve long-term sobriety.

4        14.     All these lawful, principled, and therapeutic practices changed under

5   Prospect's control and direction.  Medi/Medi patients began arriving routinely by

6   ambulance.  The ambulance service became the equivalent of a taxi service.   For

7   example, one patient was allowed to leave the Detox Unit, go have dinner, and

8   then return to the Detox Unit by ambulance.   Another, Melanie P., asked if the

9   Detox Unit would pay for a taxi.  She was told that the Detox Unit did not pay for

10  taxi service.  But she arrived, instead, by ambulance – alert and orientated.

11  Medi/Medi patients were regularly admitted with negative urine screens.  When

12  Relator would ask these patients why they were seeking admission to the Detox

13  Unit, they would respond that "Dan [Rowling] told them to" or that "Dan

14  [Rowling] said it would be alright."   In several cases where Medi/Medi patients

15  became well-known to the Detox Unit staff, Mr. Rowling did not need to instruct

16  them on how to abuse the system because they understood the scheme perfectly.

17  Once Defendants eliminated the 60-day and related constraints on revolving door

18  admissions, homeless patients began to use the Detox Unit as an expensive means

19  of obtaining food and shelter.  The Detox Unit accommodated these patients by

20  not requiring that they participate in groups or otherwise pursue Detox Unit

21  programs that were former mainstays of its therapeutic approach and culture.

22       15.     Relator and the other nurses on the Detox Unit recognized that

23  Prospect's aggressive strategies for maximizing Medi/Medi patient utilization

24  were not only an abuse of Medicare and Medi-Cal, but also an abuse of the Detox

25  Unit, eroding its quality of care and the its nursing staff's sense of purpose.  Prior

26  to Prospect's assumption of control, the Detox Unit was a place were a diverse

27  population of people chose to admit themselves in order to take the first step

28  toward reclaiming their lives from the consequences of drug and alcohol addition.

After Prospect assumed control, the Detox Unit became known as place where the homeless could routinely go just to get off the streets for a few days – if they had enough Medi/Medi coverage days "in the bank."  Experienced chemical dependency nurses who had for years played a valuable and rewarding role in helping patients turn their lives around were now faced increasingly with caring for a population of patients who had no intention of using the Detox Unit as anything but a flop house, an alternative preferable to being homeless.

## SPECIFIC EXAMPLES OF THE FRAUD

16.    Once Relator resolved in 2010 to take action against the abuses of Medicare and Medi-Cal she witnessed and her complaint herein alleges, she began to take notes based on her own contemporaneous personal observations.  These notes reflect specifics about Medi/Medi patient admission and discharge dates, an indication of whether the patient unnecessarily arrived or left by ambulance, and testing data with regard to drug or alcohol usage prior to admission.  These notes where not gathered by any impermissible means.  They are intended only to document examples arising over a several-month period in 2010 and 2011, and are not intended to suggest that the fraud has been limited to these specific patients or to the years 2010 or 2011.  Relator has shared her notes only with her legal counsel.  Due to HIPAA concerns, the patient names reflected in Relator's notes have been redacted herein.

17.    The following chart sets forth the specifics with regard to several examples of Medi/Medi patients admitted to the Detox Unit with no arguable medical basis for the admission.  In addition, several of these patients exemplify a scheme to transfer Medi/Medi patients to the Detox Unit from another Prospect-owned hospital (or from another Brotman unit) when their Medi/Medi coverage had expired with respect to their prior Prospect-unit admission.  They also

---

**FALSE CLAIMS COMPLAINT FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

exemplify in several cases the abusive and fraudulent practice of transporting these patients between and among hospital facilities by ambulance with no medical justification for doing so.

| Patient Name | Detox Unit Admission Date(s) | Explanatory Comments |
|---|---|---|
| Amber B. | 6/23/10 | Transferred to Detox Unit from Brotman's psyche unit; negative urine screen. |
| Warren D. | 10/22/10<br>11/12/10 | Negative urine screen.<br>Negative urine screen. |
| Jerome F. | 11/1/10 | Transferred to Detox Unit by ambulance from Prospect's Norwalk Community Hospital; negative urine screen. |
| Myron G. | 8/25/10<br>10/29/10 | Negative urine screen.<br>Transferred to Detox Unit by ambulance from Hollywood Community ("HCH"); negative urine screen. |
| Galvester G. | 11/12/10 | Transferred to Detox Unit by ambulance from HCH; negative urine screen. |
| Charles G. | 10/13/10 | Negative urine screen. |

2011-1002
32349.wpd

| Kathryn H. | 4/24/11 | Negative urine screen. |
|---|---|---|
| Jeffrey K. | 10/1/10 | Transferred to Detox Unit from Brotman's psyche unit; negative urine screen. |
| Emitte K. | 4/24/11 | Negative urine screen. |
| Lilly L. | 11/8/10 | Admitted to Detox Unit after discharge from HCH; negative urine screen. |
| Phillip M. | 4/24/11 | Negative urine screen. |
| Edward M. | 10/11/10 | Admitted to Detox Unit after discharge from HCH; negative urine screen. |
| Jerry M. | 11/17/10 | Admitted to Detox Unit after discharge from HCH; negative urine screen. |
| Marguerita S. | 11/8/10 | Admitted to Detox Unit from HCH; negative urine screen. |

18.     The following chart sets forth the specifics with regard to Medi/Medi patients who illustrate the abusive use of the Detox Unit as a Medicare hospital alternative to homelessness.

///

///

| Name | Detox Unit Admission Date(s) |
|---|---|

| | |
|---|---|
| Donald F. | 4/4/10 |
| | 5/6/10 |
| | 6/15/10 |
| | 7/13/10 |
| | 8/11/10 |
| Charles G. | 3/8/10 |
| | 8/17/10 |
| | 8/28/10 |
| | 9/13/10 |
| | 10/3/10 |
| | 10/13/10 |
| Gene H. | 8/17/10 |
| | 9/21/10 |
| Perry H. | 4/29/10 |
| | 5/28/10 |
| | 6/18/10 |
| | 7/13/10 |
| | 8/23/10 |
| | 9/10/10 |
| | 9/15/10 |
| | 10/8/10 |
| | 11/1/10 |
| Nivea H. | 4/4/10 |
| | 6/15/10 |
| | 8/18/10 |
| /// | |
| /// | |
| /// | |

**FALSE CLAIMS COMPLAINT FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

2011-1002
32349.wpd

| | |
|---|---|
| Ray J. | 8/23/10 |
| | 9/14/10 |
| | 9/24/10 |
| | 9/29/10 |
| Donnie K. | 3/30/10 |
| | 5/12/10 |
| | 9/10/10 |
| | 9/20/10 |
| Emitte K. | 3/4/10 |
| | 4/8/10 |
| | 7/9/10 |
| | 11/9/10 |
| | 12/7/10 |
| | 12/26/10 |
| | 1/11/11 |
| | 1/26/11 |
| | 2/1/11 |
| | 2/22/11 |
| | 2/23/11 |
| | 3/1/11 |
| | 3/8/11 |
| | 3/23/11 |
| | 4/2/11 |
| | 4/24/11 |
| /// | |
| /// | |
| /// | |
| /// | |

2011-1002
32349.wpd

| William M. | 2/?/10 |
| | 4/14/10 |
| | 6/22/10 |
| | 7/12/10 |
| | 9/?/10 |
| | 10/7/10 |
| Jennifer W. | 9/15/10 |
| | 9/30/10 |

19.     Relator alleges that these examples gathered as a result of her first-hand experience in 2010 and in 2011 after she returned from leave are illustrative of the Medicare and Medi-Cal fraud that was chronic and systematic from 2007 to the present.

20.     Relator is an RN.  As such, she is not responsible for the submission of false claims to the Government and has no permissible means of obtaining physical proof of the actual submission of the false claims associated with the above-identified individuals (or others similarly situated) or the actual payment by the Government of such false claims.  She alleges that it would have been pointless for Defendants to pursue the fraud or the kind identified with specificity above unless Defendants intended to and actually did submit corresponding false claims to the Government.

## COUNT I

## SUBSTANTIVE VIOLATIONS OF THE FALSE CLAIMS ACT

### ( 31 U.S.C.§§ 3729(a)(1)(A) & (B))

21.     Relator realleges and incorporates by reference the allegations made in Paragraphs 1 through 20 of this Complaint.

22.     This is a claim for treble damages and forfeitures under the False

1    Claims Act, 31 U.S.C. §§ 3729, *et seq.*, as amended.

2        23.        Through the acts described above, Defendants and their agents,

3    employees, and affiliates knowingly presented and caused to be presented to the

4    Government false and fraudulent claims, records, and statements in order to obtain

5    reimbursement for health care services provided under Medicare and Medi-Cal.

6        24.        Through the acts described above and otherwise, Defendants and

7    their agents, employees, and affiliates knowingly made, used and/or caused to be

8    made or used false records and statements in order to get such false and fraudulent

9    claims paid and approved by the Government.

10        25.        The Government, its fiscal intermediaries, and the state Medi-Cal

11   program, unaware of the falsity of the records, statements, and claims made or

12   submitted by Defendants and their agents, employees, or affiliates, have paid and

13   continue to pay Defendants for claims that would not be paid if the truth were

14   known.

15        26.        By reasons of the Defendants' false records, statements, and claims,

16   the Government  has been damaged in an amount in excess of one million dollars

17   in Medicare and Medi-Cal funds.

18

19                           **COUNT II**

20             **FALSE CLAIMS ACT CONSPIRACY**

21                  (31 U.S.C. § 3729(a)(1)(C))

22

23        27.        Relator realleges and incorporates by reference the allegations made

24   in Paragraphs 1 through 26 of this Complaint.

25        28.        This is a claim for treble damages and for forfeitures under the False

26   Claims Act, 31 U.S.C. §§ 3729, *et seq.*, as amended.

27        29.        Through the acts described above and otherwise, Defendants entered

28   into a  conspiracy or conspiracies, among themselves and with others to defraud

---

**FALSE CLAIMS COMPLAINT FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

2011-1002
32349.wpd

the Government by causing and getting false and fraudulent Medicare and Medi-Cal claims allowed or paid.  Defendants have taken substantial steps in furtherance of these conspiracies by, inter alia, preparing false records and by submitting such records to the Government for payment or approval.

30.     The Government, its fiscal intermediaries, and the state Medi-Cal program, unaware of Defendants' conspiracies or the falsity of the records, statements, and claims made or submitted by Defendants and their agents, employees, or affiliates, have paid and continue to pay Defendants for claims that would not be paid if the truth were known.

31.     By reasons of the Defendants' conspiracies and the acts taken in furtherance thereof, the Government has been damaged in an amount in excess of one million dollars in Medicare and Medi-Cal funds.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff/Relator prays for relief and judgment against Defendants as follows:

32.     That Defendants cease and desist from violating 31 U.S.C. §§3729, *et seq.*, as amended;

33.     That the Court enter judgment against Defendants in an amount equal to three times the amount of damages the Government has sustained as a result of Defendants' actions, as well as a civil penalty against each Defendant of $10,000 for each violation of 31 U.S.C. § 3729;

34.     That Plaintiff/Relator be awarded the maximum amount allowed pursuant to § 3730(d) of the Act;

35.     That Plaintiff/Relator be awarded all costs and expenses of this

2011-1002
32349.wpd

1   action, including attorneys' fees; and

2       36.    That the Government and Plaintiff/Relator receive all such other

3   relief as the Court deems just and proper.

4

5

6   DATED: May _16_, 2011        **SCHIMMEL & PARKS**
                                *A Professional Law Corporation*

7

8

9                                     Alan I. Schimmel

10                                    Michael W. Parks
                                  Brian A. Carness

11                                    Stacey R. Cutting
                                  Attorneys for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## JURY DEMAND

2        Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby

3   demands trial by jury.

4

5   DATED: May 16, 2011                SCHIMMEL & PARKS
                                        *A Professional Law Corporation*
6

7

8                                       Alan I. Schimmel
                                        Michael W. Parks
9                                       Brian A. Carness
                                        Stacey R. Cutting
10                                      Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2011-1002
32349.wpd

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| United States of America<br>Susan Painter | Prospect Medical Holdings, Inc.<br>Brotman Medical Center |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| MICHAEL W. PARKS<br>SCHIMMEL AND PARKS, APLC<br>15303 VENTURA BLVD., SUITE 650<br>15303 Ventura Blvd., Suite 650<br>SHERMAN OAKS, CA 91403<br>818.464.5061 | |

| II.  BASIS OF JURISDICTION (Place an X in one box only.) | III.  CITIZENSHIP OF PRINCIPAL PARTIES - For Diversity Cases Only<br>(Place an X in one box for plaintiff and one for defendant.) | | | |
|---|---|---|---|---|
| ☒ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party) | | PTF | DEF | |
| | Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State   ☐ 4   ☐ 4 |
| ☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State   ☐ 5   ☐ 5 |
| | Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation   ☐ 6   ☐ 6 |

**V.  ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V.  REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No        ☒ MONEY DEMANDED IN COMPLAINT: $ 1,000,000

**VI.  CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause.  Do not cite jurisdictional statutes unless diversity.)

31 U.S.C. 3729
VIOLATION OF FALSE CLAIMS ACT

**VII.  NATURE OF SUIT** (Place an X in one box only.)

| | | | | | |
|---|---|---|---|---|---|
| ☐400 State Reapportionment<br>☐410 Antitrust<br>☐430 Banks and Banking<br>☐450 Commerce/ICC Rates/etc.<br>☐460 Deportation<br>☐470 Racketeer Influenced and Corrupt Organizations<br>☐480 Consumer Credit<br>☐490 Cable/Sat TV<br>☐810 Selective Service<br>☐850 Securities/Commodities/Exchange<br>☐875 Customer Challenge 12 USC 3410<br>☐890 Other Statutory Actions<br>☐891 Agricultural Act<br>☐892 Economic Stabilization Act<br>☐893 Environmental Matters<br>☐894 Energy Allocation Act<br>☐895 Freedom of Info. Act<br>☐900 Appeal of Fee Determination Under Equal Access to Justice<br>☐950 Constitutionality of State Statutes | ☐110 Insurance<br>☐120 Marine<br>☐130 Miller Act<br>☐140 Negotiable Instrument<br>☐150 Recovery of Overpayment & Enforcement of Judgment<br>☐151 Medicare Act<br>☐152 Recovery of Defaulted Student Loan (Excl. Veterans)<br>☐153 Recovery of Overpayment of Veteran's Benefits<br>☐160 Stockholders' Suits<br>☐190 Other Contract<br>☐195 Contract Product Liability<br>☐196 Franchise<br>☐210 Land Condemnation<br>☐220 Foreclosure<br>☐230 Rent Lease & Ejectment<br>☐240 Torts to Land<br>☐245 Tort Product Liability<br>☐290 All Other Real Property | ☐310 Airplane<br>☐315 Airplane Product Liability<br>☐320 Assault, Libel & Slander<br>☐330 Fed. Employers' Liability<br>☐340 Marine<br>☐345 Marine Product Liability<br>☐350 Motor Vehicle<br>☐355 Motor Vehicle Product Liability<br>☐360 Other Personal Injury<br>☐362 Personal Injury-Med Malpractice<br>☐365 Personal Injury-Product Liability<br>☐368 Asbestos Personal Injury Product Liability | ☐370 Other Fraud<br>☐371 Truth in Lending<br>☐380 Other Personal Property Damage<br>☐385 Property Damage Product Liability<br><br>☐422 Appeal 28 USC 158<br>☐423 Withdrawal 28 USC 157<br><br>☐441 Voting<br>☐442 Employment<br>☐443 Housing/Accommodations<br>☐444 Welfare<br>☐445 American with Disabilities - Employment<br>☐446 American with Disabilities - Other<br>☐440 Other Civil Rights | ☐510 Motions to Vacate Sentence Habeas Corpus<br>☐530 General<br>☐535 Death Penalty<br>☐540 Mandamus/Other<br>☐550 Civil Rights<br>☐555 Prison Condition<br><br>☐610 Agriculture<br>☐620 Other Food & Drug<br>☐625 Drug Related Seizure of Property 21 USC 881<br>☐630 Liquor Laws<br>☐640 R.R. & Truck<br>☐650 Airline Regs<br>☐660 Occupational Safety/Health<br>☐690 Other | ☐710 Fair Labor Standards Act<br>☐720 Labor/Mgmt. Relations<br>☐730 Labor/Mgmt. Reporting & Disclosure Act<br>☐740 Railway Labor Act<br>☐790 Other Labor Litigation<br>☐791 Empl. Ret. Inc. Security Act<br><br>☐820 Copyrights<br>☐830 Patent<br>☐840 Trademark<br><br>☐861 HIA (1395ff)<br>☐862 Black Lung (923)<br>☐863 DIWC/DIWW (405(g))<br>☐864 SSID Title XVI<br>☐865 RSI (405(g))<br><br>☐870 Taxes (U.S. Plaintiff or Defendant)<br>☐871 IRS - Third Party 26 USC 7609 |

CV11-04260

**FOR OFFICE USE ONLY:**  Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

/III(a).  **IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  [X] No   [ ] Yes

f yes, list case number(s): _____

/III(b).  **RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  [X] No   [ ] Yes

f yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

Check all boxes that apply)   [ ]  A. Arise from the same or closely related transactions, happenings, or events; or

[ ]  B. Call for determination of the same or substantially related or similar questions of law and fact; or

[ ]  C. For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ]  D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. VENUE:** (When completing the following information, use an additional sheet if necessary.)

a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.

[X]  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  |  |

b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.

[ ]  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES COUNTY<br>LOS ANGELES COUNTY |  |

c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.

Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES COUNTY |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties

Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _~signature~_          Date May 17, 2011

MICHAEL W. PARKS, ESQ.

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge John F. Walter and the assigned discovery Magistrate Judge is Patrick J. Walsh.

The case number on all documents filed with the Court should read as follows:

## CV11- 4260 JFW (PJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.